Oliver 0. Sutton, J.
This is an action based on a note, dated June 13, 1969, executed by the defendant to the order of the plaintiff in the amount of $4,212. Defendant executed the note in the said amount in order to receive the net sum of $3,451.84 to purchase an automobile. Thus, the note includes a discount of $758.16 plus $2 -filing fee. The note was to be paid in 36 monthly installments of $117 each, commencing on July 21,1969.
The automobile was1 totally wrecked on April 20, 1970; and thereafter, having paid 15 monthly installments, defendant •sought to liquidate the balance of the indebtedness in May, 1970 by tendering the plaintiff the sum of $1,951.56 in full payment thereof. Defendant refused to accept the sum tendered and demanded instead the sum of $2,086.
The discrepancy between the sum demanded and the sum tendered amounts to $134.44 and, from the information before the court, stems from the use of two entirely different methods of computing the amount of the unearned portion of interest previously deducted by the bank which it is required to refund to the borrower upon prepayment of the loan.
Following the failure to agree with the bank on the amount of the balance due on the loan, the defendant made no further monthly payments but was credited by the bank with having-paid the account through September, 1970, the first 15 months of the term of the loan, although in fact the 15 payinents were made within one year. When the defendant failed to make payments in October, November and December, 1970, the plaintiff, pursuant to the terms of the note, elected to declare the entire balance of the note due and payable and accordingly indorsed the note to that effect on January 25, 1971. By its complaint, the plaintiff now seeks tq recover from the defendant $2,848.55, which sum includes the -alleged loan balance of $2,457 plus $371.55 for counsel fees and $20 late charges. The instant motion by plaintiff prays for an order striking defendant’s *505 responsive answer and directing that summary judgment be entered in favor of the plaintiff herein.
In his answer, which the plaintiff has moved to strike, defendant sets up the defenses (1) that the contract between the parties is divisible and, therefore, is improperly presented herein as an entire contract, (2) discharge of the obligation by full tender on or about May 21, 1970 to the plaintiff of the amount due, (3) that the amount of interest which the plaintiff ■seeks to collect on this loan constitutes usury, (4) that section 108 of the Banking Law which governs the amount of previously deducted interest that a bank must rebate to a borrower who prepays a personal loan is null and void because of vagueness, and (5) that section 108 of the Banking Law is unconstitutional in that it confers punitive measures upon a body which cannot possess such measures. In the instant cross motion defendant moves for summary judgment and for an order transforming this action into a class action.
Lengthy affidavits and briefs have been submitted by both sides which raise tangential and not exceedingly relevant issues, but the court wishes to get to the very heart of the main question posed herein.
There is no question that defendant had made 15 payments at $117 each for a total repayment of $1,755. There is also no denial that this amount was paid within 11 months from the. inception of the loan. It has also been shown that plaintiff discounted $758.16 in interest from the face amount of the note, which represented interest at 6% per annum on $4,212 for three years (or $252.72 per year). After the 15 payments had been made, there remained due 21 payments at $117 each for a total of $2,457 if the payments had been made over the 36-month period provided in the note. Defendant elected, however, to prepay the entire balance .shortly before the expiration of one year and tendered the plaintiff $1,951.56. This sum would repay the bank the entire remainder of the sum it advanced under the note, plus one full year’s interest at 6% or $252.72. This sum also contemplated that the bank would rebate to the defendant $505.44 or two year’s interest which had been previously deducted but no part of which had been earned by the bank.
On the other hand, the bank demanded from the defendant $2,086, a sum which provided a rebate to the borrower of only $371 while the bank retained $252.72 in earned interest plus $134.44 in unearned interest for a total of $387.16.
I address myself now solely to that portion of the interest which was admittedly unearned and which is the sole basis of this controversy.
*506 The amount of interest that a bank or trust company must rebate to a borrower who prepays a personal loan is determined by the Banking Law. Section 108 (subd. 4, par. [e]) of that law provides: “A borrower may prepay the loan in full or, with the consent of the bank or trust company, may refinance the loan. In the event of such prepayment or refinancing, the bank or trust company shall refund: (1) the unearned portion of the interest previously deducted to the borrower to the ratable extent at least that the sum of the unpaid balances of the loan scheduled at regular periodic intervals of not more than one month from the date of repayment to and including the maturity [date] of the final installment bears to the sum of all the unpaid balances of the loan schedule at like periodic intervals from its inception-to and including the maturity of the final installment; provided, however, that if the amount of interest previously deducted (i) was less than ten dollars, no refund shall be required; or (ii) that if the interest previously deducted exceeded the sum of ten dollars and the earned interest is less than that amount, the bank or trust company may retain such an additional amount as will bring the earned interest to the sum of ten dollars and refund the remainder, and provided further, that unless the loan is refinanced, no refund shall be required if it amounts to less than one dollar ”.
In computing the amount of unearned interest which it proposed to rebate to the defendant, the bank admittedly used a method of computation which is commonly known as the ‘ ‘ .sum of the digits ”. In paragraph 18 of its moving papers the bank contends that this is the method required by section 108 (subd. 4, par. [e]) of the Banking Law and that defendant offered prepayment on the basis of a different rebate formula.
Thus, the question squarely before the court is whether plaintiff’s or defendant’s interpretation of that portion of the statute is correct.
Guidelines for the construction of statutes, as laid down by New York courts are both numerous and consistent. “ The courts are to give effect to the intention of the Legislature, and if the purpose of a statute can be discerned from its language in the light of the mischief to be remedied, such intent should not be thwarted due to verbal inadvertence. Here, as in Riggs v. Palmer (115 N. Y. 506, 509), a thing which is within the letter of the statute is not within the statute unless it is within the intention of the makers. The writers of laws do not always express their intention perfectly, but either exceed it or fall short of it, so that judges are to collect it from probable or rational conjectures only * * (Matter of Barry Equity Corp. *507 [Marcia Hat Co.], 276 App. Div. 685, 689. In accord, Metropolitan Life Ins. Co. v. Durkin, 276 App. Div. 394, affd. 301 N. Y. 376; Matter of United Parcel Service v. Joseph, 272 App. Div. 194, rearg. den. 272 App. Div. 874, affd. 297 N. Y. 1004; Westchester County S.P.C.A. v. Mengel, 266 App. Div. 151, affd. 292 N. Y. 121; Pyrke v. Standard Acc. Ins. Co., 144 Misc. 53, affd. sub nom. Baldwin v. Standard Acc. Ins. Co., 237 App. Div. 334, affd. 262 N. Y. 575.)
Now, the “ sum of the digits ” is nothing more or less than an accounting method widely employed in computing prepayment refunds relating to installment credit transactions. It is a weighted method whereby unequal portions of interest previously deducted are allocated to each installment due under the contract. The largest proportion is allocated to the first installment and the smallest to the last, on the theory that at the time of the first installment the lender’s risk and the borrower’s obligation are at their peak, and both diminish with each succeeding payment. Accordingly, when interest, unearned by the lender, is rebated to the borrower, the rebate is proportional and therefore smaller than it would be if the rebate were based on a pro rata part of the time the contract has run or some other method. Conversely, use of this formula allows a lender to retain a greater part of the unearned interest which had been in its possession since the inception of the loan.
In spite of its wide use by lending corporations, there is nothing sacrosanct or inviolable about the use of this formula. Nor is the logic used to support it irrefutable. It certainly is not mandated by section 108 (subd. 4, par. [e]) of the Banking Law. Section 108 (subd. 4, par. [e]) of the Banking Law mandates only that ‘ ‘ In the event of such prepayment or refinancing, the bank or trust company shall refund: (1) the unearned portion of the interest previously deducted to the borrower to the ratable extent at least ” (emphasis supplied). Hence, it appears that the purpose of the cited section was to mandate a mimmum return to the borrower and not to establish an unvarying or unalterable method for computing rebates. This court is convinced that no other logical interpretation may be put on the inclusion by the Legislature of the words “at least”. The court is further convinced that, had the Legislature intended this to be the only method or the sole prescribed method of rebating unearned interest, it would have .so stated or omitted the words ‘ ‘ at least ”. In so construing section 108 (subd. 4, par. [e]), the court has given heed to the principle that the court must ‘ ‘ assume that every provision of the statute was intended to serve some useful purpose ”. (Allen v. Stevens, 161 N. Y. *508 122, 145), as well as to the principle that in doing so the court should “ aim to reconcile apparent contradictions (Hoey v. Gilroy, 129 N. Y. 132, 137.)
Moreover, section 14-a of the Banking Law provides:
“1. It is hereby declared to be the policy of the state of New York that for the period ending September first, nineteen hundred seventy-two the rate of interest provided in section 5-501 of the general obligations law shall be adjusted by the banking board in response to changed economic conditions in such manner as to insure the availability of credit at reasonable rates to the people of the state while- affording a competitive return to persons extending such credit.
“2. (a) For the purpose of effectuating the policy declared in subdivision one of this section, the banking board shall have power prior to September first, nineteen hundred seventy-two by a three-fifths vote of all its members: (1) from time to time, but not more often than quarterly, to prescribe by regulation a rate of interest not less than five per centum per annum nor more than seven and one-half per centum per annum as the maximum rate of interest to be charged, taken or received, upon a loan or forbearance of any money, goods or things in action, except as otherwise provided by law”.
Section 5-501 of the General Obligations Law, referred to in the statute cited above, stated:
‘ ‘ 1. The rate of interest upon the loan or forbearance of any money, goods or things in action, except as otherwise provided by law, shall be six dollars upon one hundred dollars, for one year, and at that rate for a greater or less sum, or for a longer or shorter time.
2. No person or corporation shall, directly or indirectly, take or receive in money, goods or things in action, or in any other way, any greater sum or greater value, for the loan or forbearance of any money, goods or things in action, than is above prescribed. ’ ’
In section 108 (subd. 4, par. [b]) of the Banking Law, the Legislature again states:
“ (b) A bank or trust company which operates a personal loan department may make loans and charge interest thereon as computed pursuant to this section, which may be taken in advance, computed from the date of the loan * * * to the date of the last installment payable thereunder, at a rate not to exceed six dollars per annum discount per one hundred dollars of the face amount or ten dollars if the interest so computed is less than that amount, with respect to any loan which is repayable in equal .or substantially equal installments at regular *509 periodic intervals of not more than one month over a period from the date of the loan not exceeding (i) twenty-five months, if the face amount of the loan is for not more than twelve hundred dollars, or (ii) thirty-seven months, if the face amount of the loan is for (a) more than twelve hundred dollars ”.
Thus, in repeated pronouncements, the Legislature has unequivocally declared that the public policy of this State and the intent of the Legislature is that an annual rate of interest which is reasonable to the borrower while it affords competitive return to the lender is 6% per annum on the face amount of a loan or forbearance of money. More emphatically, the General Obligations Law (cited above) declares that no amount of interest greater than 6% per annum shall be received directly or indirectly by any person or corporation, upon a loan or forbearance of money, unless otherwise specifically provided for. I find no special provision for a bank to collect interest on a personal loan in excess of 6% per annum.
In the light of all the statutory provisions cited, I think that the bank’s use of the “ sum of the digits ” method to compute defendant’s rebate of interest previously deducted was, under the circumstances presented herein, clearly in error.
‘ ‘ In the interpretation of legislative enactments, inconsistency in the same statute is thought to be contrary to the intent of the lawmakers. * * # Effect must be given, if practicable, to all the language employed * * * to reach the real intent of the Legislature.” (Auswin Realty Corp. v. Kirschbaum, 270 App. Div. 334, 338.) And that intent “ ‘ is to be found, not in the words of the particular section alone, but by comparing it with other parts or provisions of the general scheme of which it is a part. ’ ” (Matter of Newton, 177 Misc. 877, 883; affd. 267 App. Div. 913, affd. 294 N. Y. 687.)
By using the method of computation which it contends is prescribed by section 108 (subd. 4, par. [e]) of the Banking Law, the bank contends that it is entitled to $387.16 interest on a $4,212 loan for a period slightly less than one year. The amount of interest thus reserved would be more than 9% per annum, which is even in excess of the allowable latitude of 5% to 71A% per annum permitted in section 14-a (subd. 2, par. [a], cl. [1]) of the Banking Law cited above.
I find, therefore, that the bank’s use of the “ sum of the digits ” method to compute defendant’s rebate of interest previously deducted was, under the circumstances presented herein, clearly violative both of the statute and of the legislative intent. I further find and hold, that as to this case, this method may not be used to accomplish by indirect means the retention of a rate *510 of interest which, quite obviously, would be usurious if charged directly.
As to the effect of the tender alleged by defendant and admitted by plaintiff, ‘ ‘ Any party making tender of full payment * * * when or after * * * due is discharged to the extent of all subsequent liability for interest, costs and attorney’s fees.” (Uniform Commercial Code, § 3-604, subd. [1].) “A tender does not pay the debt. It only has the effect of stopping interest and costs, and makes the holder liable for damages if any are suffered by the debtor by reason of the holder’s refusal to accept the tender.” (National Bank of Rochester v. Erion-Haines Realty Co., 123 Misc. 873, affd. 213 App. Div. 54, 56.)
In view of the above findings and determinations, the question. now is how they apply to these litigants.
Defendant’s cross motion for summary judgment adjudging the defendant as having discharged the contract by performance and for an order transforming this action into a class action is denied.
Plaintiff’s motion for summary judgment is granted to the extent only of $1,951.56, and judgment .shall be entered in favor of the plaintiff and against the defendant for that amount, without costs, interest or attorney’s fees. In all other respects plaintiff’s motion is denied.